**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

3:07CV209-wha

| | | |
|---|---|---|
| IN RE: | } | CASE NO:  05-80117-WRS |
| Debtors: | } | |
| Hildreth, James D. | } | CHAPTER:  13 |
| Hildreth, Eldora B. | } | |
| | } | |
| Debtor(s) | } | |
| Soc.Sec.No(s).:  xxx-xx-2111 | } | |
| xxx-xx-2558 | | |

## DESIGNATION OF RECORD AND STATEMENT OF THE ISSUES TO BE PRESENTED

Comes now WASHINGTON MUTUAL BANK, appellant in the above styled cause and hereby designates the following records:

1. Docket entry #3, Chapter 13 plan of the debtor.

2. Docket entry #11, Notice of Appearance and Request for Notice filed by Gene R. Clark on behalf of Washington Mutual Bank, FA.

3. Docket entry #13, Motion for Relief from Stay filed by Washington Mutual Bank, FA.

4. Docket entry #21, Order Denying Motion for Relief from Stay of Washington Mutual Bank, FA.

5. Docket entry #23, Motion to Set Aside Order denying Motion for Relief and Request for Hearing filed by Washington Mutual Bank, FA.

6. Docket entry #26, Order granting Motion to Set Aside Order conditionally denying Motion for Relief from Stay.

7. Docket entry #28, Motion for Contempt filed by F. Patrick Loftin on behalf of Eldora B. Hildreth and James D. Hildreth.

8. Docket entry #29, Notice of Hearing set on Docket entry #28, Debtors' Motion for Contempt. The hearing scheduled 12/6/06 at 10:00 a.m.

9. Docket entry #30, Affidavit re: Time expended on Motion for Contempt.

10.  Docket entry #31, Order imposing sanctions against Washington Mutual.

11.  Docket entry #32, Memorandum Decision/opinion authored by Judge William Sawyer.

12.  Docket entry #35, Motion to Reconsider/Set Aside filed by Washington Mutual Bank, FA., and its attachments.

13.  Docket entry #36, Order Setting Evidentiary Hearing on 1/4/07 relating to the Motion to Reconsider/Set Aside filed by Washington Mutual Bank, FA.

14.  Docket entry #38, Brief in support of Motion to Reconsider filed by Washington Mutual Bank, FA.

15.  Docket entry #39, Exhibit A filed by Washington Mutual Bank, FA.

16.  Docket entry #41, Order Denying Motion to Reconsider/Set Aside.

17.  Docket entry #42, Memorandum Decision/opinion authored by Judge William Sawyer entered on 2/9/07.

18.  Docket entry #45, Notice of Appeal.


In addition, the appellant hereby designates of record the transcripts requested in Docket entry #51 and #52.


## STATEMENT OF THE ISSUES TO BE PRESENTED


1.  Did the Bankruptcy Court commit reversible error by holding Washington Mutual Bank was properly served with the Debtors' Motion for Contempt even though it was not served at the address designated on the request of Creditor pursuant to Rule 2002-G providing proper and exclusive address for service of notices and pleadings filed with court on April 28, 2005 Docket entry #11?

2.  Did the Bankruptcy Court commit reversible error by the allowing the Debtors to proceed with their Motion for Contempt alleging violations of Section 362 of the United States Bankruptcy Code in violation of the Court's local rules?

3. Did the Bankruptcy Court commit reversible error in its Memorandum Decision dated 12/14/2006, Docket entry #32, by holding that the Debtors could properly bring this matter before the court seeking monetary damages by way of motion rather than by way of adversarial proceeding?

4. Did the Bankruptcy Court commit reversible error by holding that Washington Mutual Bank was properly served with the Debtors' Motion for Contempt pursuant to Federal Bankruptcy rules 7004(h) by way of electronic notice to an attorney who had appeared for Washington Mutual Bank?

5. Did the Bankruptcy Court commit reversible error by finding that Washington Mutual and not Washington Mutual Bank was the real party in interest in the Memorandum Decision dated 2/9/2007 Docket entry #42?

6. Did the Bankruptcy Court commit reversible error by finding that the distinction between Washington Mutual and Washington Mutual Bank is inconsequential for the purposes of determining the real party in interest in the Memorandum Decision dated 2/9/2007 Docket entry #42?

7. Did the Bankruptcy Court commit reversible error by holding Washington Mutual Bank's attorney had been served by mail even though Washington Mutual Bank's attorney stated on the record that she had not been served by mail?

Respectfully submitted,

_Susannah R. Walker_
Susannah R. Walker (WAL 158)
Attorney for Creditor

OF COUNSEL:
SIROTE & PERMUTT, P.C.
P. O. Box 55887
Birmingham, Alabama 35255-5887
205-930-5424 / fax 205-930-5101
swalker@sirote.com

## CERTIFICATE OF SERVICE

I hereby certify in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004 that a copy of the above and foregoing was mailed, first class postage prepaid or served via electronic case management to:

F Patrick Loftin
P O Box 2566
Phenix City, AL 36868

James D. Hildreth
9 Redfield Drive
Phenix City, AL 36869

Curtis C. Reding
P.O. Box 173
Montgomery, AL 36101

Eldora B. Hildreth
9 Redfield Drive
Phenix City, AL 36869

On this the 26 day of Feb , 2007.

OF COUNSEL

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION**

| | |
|---|---|
| IN RE: | } CASE NO:    05-80117-WRS |
| Debtors: | } |
| Hildreth, James D. | } CHAPTER:  13 |
| Hildreth, Eldora B. | } |
|            Debtor(s) | } |
| Soc.Sec.No(s).:       xxx-xx-2111 | } |
|            xxx-xx-2558 | |

**AMENDED STATEMENT OF THE ISSUES TO BE PRESENTED**

Comes now WASHINGTON MUTUAL BANK, and amends # 4 of the statement of issues as follows:

4.    Did the Bankruptcy Court commit reversible error by holding that Washington Mutual Bank was properly served with the Debtors' Motion for Contempt pursuant to Federal Bankruptcy rules 7004(h) by way of electronic notice to an attorney who had appeared for Washington Mutual Bank in matters other than the Motion for Contempt?

Respectfully submitted,

_/s/ S.R. Walker_
Susannah R. Walker (WAL 158)
Attorney for Creditor

OF COUNSEL:
SIROTE & PERMUTT, P.C.
P. O. Box 55887
Birmingham, Alabama  35255-5887
205-930-5424 / fax 205-930-5101
swalker@sirote.com

**CERTIFICATE OF SERVICE**

I hereby certify in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004 that a copy of the above and foregoing was mailed, first class postage prepaid or served via electronic case management to:

| | | |
|---|---|---|
| F Patrick Loftin | James D. Hildreth | Curtis C. Reding |
| P O Box 2566 | Eldora B. Hildreth | P.O. Box 173 |
| Phenix City, AL  36868 | 9 Redfield Drive | Montgomery, AL  36101 |
| | Phenix City, AL  36869 | |

On this the _27_ day of _Feb_____, 2007.

_/s/ S.R. Walker_
OF COUNSEL

# United States Bankruptcy Court
## Middle District of Alabama

RECEIVED

2007 MAR -8 P 1:53

In re:

James D. Hildreth and

Eldora B. Hildreth,

        Debtors

Case No.  05-80117-WRS

Chapter 13

*3:07CV209-WHA*

### NOTICE OF APPEAL

Washington Mutual Bank, a creditor appeals under 28 U.S.C. § 158(a) from the following Orders entered by the Honorable William R. Sawyer, United States Bankruptcy Judge.  The Order imposing sanctions against Washington Mutual for violation of the automatic stay entered on December 14, 2006 and the Order denying Washington Mutual Bank's Motion to Reconsider/Set Aside entered on  February 9, 2007.

    The names of all parties to the Order appealed from and the name, addresses, and telephone numbers of their respective attorneys are as follows:

1.  F. Patrick Loftin, P.O. Box 2566, Phenix City, AL 36868-2566.  334-297-1870.  Attorney for Debtor

2.  James D. and Eldora B. Hildreth, 9 Redfield Drive, Phenix City, AL 36869.  Debtors

3.  Curtis C. Reding, P.O. Box 173, Montgomery, AL 36101.  Trustee

Dated February 16, 2007.

Signed: _SRWalker_

Susannah R. Walker (WAL158)

Attorney for Appellant
Susannah Walker
Sirote and Permutt, P.C.
P.O. Box 55727, Birmingham, Al 35255-5727
205-930-5424

Debtor: James D. Hildreth
Joint Debtor: Eldora B. Hildreth
Case No.(if known):

**United States Bankruptcy Court**
**Middle District of Alabama**
**Chapter 13 Plan or Summary**
Check If Amended Plan ☐

3: 07CV209-wha

1. **PAYMENTS TO TRUSTEE:**    $72.00    Per Week    beginning January 20, 2005

2. **DISTRIBUTIONS BY TRUSTEE FROM THE PAYMENTS RECEIVED SHALL BE MADE AS FOLLOWS:**

**First:**    ADMINISTRATIVE CLAIMS under 11 USC §503(b). Debtor's attorney fee is:    $1,600.00

**Second:**    SECURED CLAIMS
    a. Secured claims being paid through the trustee:

| Creditor | Amount of Debt | Value of Collateral | No. of Payments | Interest Under Plan | Specified Monthly Payment |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

    b. Prepetition defaults being cured through the trustee:

| Creditor | Amount of Arrearage | Annual Interest | No. of Payments | Date Post-Petition Payment Will Resume | Specified Monthly Payment |
|---|---|---|---|---|---|
| Washington Mutual | $2,800.00 | 8% | | February 1, 2005 | $78.00 |
| | | | | | |
| | | | | | |
| | | | | | |

    c. Secured claims to be paid directly by the debtor or other party to the creditor:

| Creditor | Amount of Debt | Value of Collateral | Contractual Payment |
|---|---|---|---|
| Washington Mutual | $85,000.00 | $98,000.00 | $680.00 |
| | | | |
| | | | |
| | | | |

    d. Secured claims to be satisfied by the surrender and return of collateral:

| Creditor | Description of Collateral | Amount of Debt | Value of Collateral |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**Third:**    PRIORITY CLAIMS (11 usc §507(A)(2) TO (8)):

| Creditor | Amount of Debt | Specified Monthly Payment |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**Fourth:  SPECIALLY CLASSIFIED UNSECURED CLAIMS**

| Creditor | Basis for Classification | Amount of Debt Specially Classified | Specified Monthly Payment |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Fifth:    UNSECURED CLAIMS**

UNSECURED CLAIMS, including the unsecured portion of secured claims, a pro rata amount equal to  100  % of the claim.  If unsecured creditors are to receive less than 100% of their claims, the debtor(s) will pay all projected disposable income to the trustee for at least 36 months.

**3.  DURATION OF PLAN**

The expected duration of this plan is  52  months.

**4.  PROVISIONS FOR UNSCHEDULED, POSTPETITION, OR LATE FILED CLAIMS ARE AS FOLLOWS:**

**5.  PROVISIONS FOR PROPERTY OF THE ESTATE (See 11 U.S.C. §1303, §1306 and §1327):**

**6.  PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES (See 11 U.S.C. §1322(b)(7) and §365):**

**7.  OTHER PROVISIONS:**

/s/ James D. Hildreth

Debtor

/s/ Eldora B. Hildreth

Joint Debtor

1/26/05

Date

# UNITED STATES BANKRUPTCY COURT
## Middle District of Alabama – Opelika

In re:                                                          Case No. 05-80117

James D. Hildreth                                               Chapter 13
Eldora B. Hildreth

Debtor(s).          3:07CV209-wha

**REQUEST OF CREDITOR PURSUANT TO RULE 2002(g) PROVIDING
PROPER AND EXCLUSIVE ADDRESS FOR SERVICE OF NOTICES AND
PLEADINGS**

TO: Clerk of Court, United States Bankruptcy Court

This request is filed for the purpose of ensuring that Washington Mutual Bank, FA, a
secured creditor, in connection with the above-referenced bankruptcy petition, receives
all notices, pleadings, and copies of Orders serving as notices to which such creditor is
entitled pursuant to the Bankruptcy Code, Bankruptcy Rules, Local Rules and Orders of
the Court.

The proper and exclusive address to which all such notices should be sent appears below.
Please add my name and address to the court's mailing list. This request is made pursuant
to Bankruptcy Rule 2002(g).

     Washington Mutual Bank, FA
     7800 N 113th St
     Milwaukee, WI 53224

Dated: 4/28/2005

Washington Mutual Bank, FA

By:    Miller & Clark, PC, Attorney for Creditor (Limited Purpose)

      By: /s/ Gene R. Clark

**Proof of Service**
**Case No. AL 05-80117**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is Miller & Clark, PC, 19732 MacArthur Blvd., Suite 100, Irvine, Ca 92612.

On 4/28/2005, I caused to be served the foregoing document(s) described as:

**REQUEST FOR NOTICE**

on the parties to this action:

** Please see attached service list **

by placing a true copy thereof enclosed in a sealed envelope and addressed as follows:

<u>X</u>  **BY MAIL**

I deposited such envelope(s) in the mail at Irvine, California. The envelope(s) was/were mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and executed on 4/28/2005, at Irvine, California.

/s/ Ryan Newman
Ryan Newman

## Service List
Case No. AL  05-80117
Request for Special Notice

**Debtor**
James D. Hildreth
9  REDFIELD DR
PHENIX CITY, AL   36869

**Co-Debtor**
Eldora B. Hildreth
9  REDFIELD DR
PHENIX CITY, AL   36869

**Debtor Attorney(s)**
F. Patrick  Loftin
Post Office Box 2566
Phenix City, AL        36868-2566

**Co-Debtor Attorney(s)**
F. Patrick  Loftin
Post Office Box 2566
Phenix City, AL        36868-2566

**Trustee**
Curtis C.  Reding
P. O. Box l73
Montgomery, AL   36l0l

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | } | CASE NO:    05-80117-WRS |
| | } | |
| Hildreth, James D. | } | CHAPTER:  13 |
| Hildreth, Eldora B. | } | |
| | } | |
| | } | 3:07CV209-wha |
| **Debtor(s)** | } | |
| Soc.Sec.No(s).:    xxx-xx-2111 | } | |
| xxx-xx-2558 | | |

☒    **Movant is willing to consider an adequate protection agreement.**
The motion will be served with a form for a proposed order agreeable to the moving party, leaving blank, where appropriate, amounts to be arrived at by way of negotiation or determined upon further factual development.

☐    **Movant is not willing to consider an adequate protection agreement.**
Pursuant to LBR 4001-1, the moving party seeks relief from the automatic stay.  Unless a response is filed and served upon the moving party within 20 days from the date of service of this motion, the motion may be granted by the court without further notice or hearing.

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## FILED BY WASHINGTON MUTUAL BANK

Comes now WASHINGTON MUTUAL BANK, its principals, investors, successors, and/or assigns, if any, (hereinafter "Creditor"), by and through its undersigned counsel of record, Sirote & Permutt, P.C., and moves this Honorable Court to lift the automatic stay in the above-referenced Debtor(s)' Chapter 13 bankruptcy and in support thereof, Creditor avers as follows:

1.      This Honorable Court has jurisdiction to hear these matters and enter final orders pursuant to 28 U.S.C. §§ 157 and 1334; and 11 U.S.C. § 362.  The Motion for

I:\Hildreth, James & Eldora(Washington Mutual)\MFR & Affidavit.doc DRAFT 11/23/05  11:05 AM

Relief from Automatic Stay constitutes a core proceeding and is a contested matter pursuant to Fed. R. Bankr. P. 4001(a) and 9014.

2.    The Creditor holds a mortgage lien on the property commonly referred to as 9 Redfield Drive, Phenix City, AL 36869, and legally described in the Mortgage and Note.

3.    The Creditor has not received post-petition regular monthly routine maintenance mortgage payment(s). The mortgage and loan held by the Creditor is in post-petition default under the terms and conditions stated upon the face of the mortgage and loan documents. The Debtor(s) is/are in post-petition default for the mortgage payments due for the months of September, 2005 through the current date, plus late fees, attorneys fees and costs.

4.    The Debtor(s)' failure to make regular monthly routine maintenance mortgage payments unto the Creditor as they become due post-petition results in a unilateral modification of the mortgage and note between the parties in violation of 11 U.S.C. § 1322(b)(2).

5.    The Debtor(s) has/have not made a good faith effort to provide for and make the regular monthly routine maintenance mortgage payments as they become due in a manner to ensure that the Creditor receives the regular monthly routine maintenance mortgage payments consistent with the terms of the mortgage and mortgage loan documents.

6.    The Debtor(s) has/have willfully violated the terms and provisions of his/her/their Chapter 13 plan, and if applicable the order confirming said plan.

7.    The Debtor(s)' actions have caused unreasonable delay that is prejudicial to the Creditor. Further, the Creditor is not adequately protected.

8.    The Creditor desires to protect its interests and proceed with taking possession of the property.

**WAIVER OF FED. R. BANKR. P. 4001(a)(3)**

I:\Hildreth, James & Eldora(Washington Mutual)\MFR & Affidavit.doc DRAFT 11/23/05 11:05 AM

9.    This is a Chapter 13 bankruptcy case. The Debtor(s) either know, should know, or have been informed by Debtor(s)' Counsel of the rules of this Bankruptcy Court and the potential penalties for non-compliance. Therefore, the Creditor requests this court waive the ten day "stay" in accordance with Fed. R. Bankr. P. 4001(a)(3).

## FUTURE DEFAULT

10.    Should this Honorable Court deny the Creditor's Motion for Relief from Automatic Stay, the Creditor would request that this Honorable Court direct that the stay shall be immediately lifted, without further order or notice, as to the Creditor in the event that the Debtor should default on any future payments.

## ATTORNEYS FEE

11.    The Creditor has had to incur additional expense in order to collect this post-petition debt in the form of attorneys fees and costs and requests this Court to award the Creditor reasonable attorneys fees and court costs associated with this matter.

**WHEREFORE, ABOVE PREMISES CONSIDERED,** the Creditor herein prays that this Honorable Court will lift, modify, or terminate the automatic stay now in force and effect in order that the Creditor may obtain possession of its collateral and may foreclose or liquidate its collateral under state law; grant said Creditor reasonable attorneys fees and costs associated with the filing of this Motion; waive the effect of Fed. R. Bankr. P. 4001(a)(3); or IN THE ALTERNATIVE, order an appropriate cure of the post-petition arrearage and default; grant said Creditor reasonable attorneys fees and costs associated with the filing of this Motion; and grant said Creditor future relief, modification, termination, or lifting of the automatic stay now in force and effect, should the Debtor(s) default on any future payments to be made unto said Creditor, in order that the Creditor may obtain possession of its collateral, may foreclose, or liquidate its collateral under state law.

I:\Hildreth, James & Eldora(Washington Mutual)\MFR & Affidavit.doc DRAFT 11/23/05  11:05 AM

Respectfully submitted,

*Diane C. Murray*
Diane Murray (MUR-048)
Attorney for Creditor

OF COUNSEL:
SIROTE & PERMUTT, P.C.
P. O. Box 55887
Birmingham, Alabama 35255-5887
205-930-5257/fax 205-930-5101
dmurray@sirote.com

## CERTIFICATE OF SERVICE

I hereby certify in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004 that a copy of the above and foregoing Motion for Relief from the Automatic Stay was mailed, first class postage prepaid or served via electronic case management to:

| | | |
|---|---|---|
| F. Patrick Loftin | James D. Hildreth | Curtis C. Reding |
| P O Box 2566 | Eldora B. Hildreth | P.O. Box 173 |
| Phenix City, AL 36868-2566 | 9 Redfield Drive | Montgomery, AL 36101 |
| | Phenix City, AL 36869 | |

On this the 23rd day of _November_, 2005.

*Diane C. Murray*
OF COUNSEL

I:\Hildreth, James & Eldora(Washington Mutual)\MFR & Affidavit.doc DRAFT 11/23/05 11:05 AM

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | } | **CASE NO:  05-80117-WRS** |
| | } | |
| **Hildreth, James D.** | } | **CHAPTER:  13** |
| | } | |
| **Debtor(s)** | } | |
| **Soc.Sec.No(s).:     xxx-xx-2111** | } | |

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY WASHINGTON MUTUAL BANK

This matter coming before the Court on the Motion for Relief from Automatic Stay filed

by WASHINGTON MUTUAL BANK (hereinafter "Creditor"), and this Court being informed of

the agreement of the parties hereto, it is therefore **ORDERED, ADJUDGED AND DECREED**

as follows:

1.     The Chapter 13 plan is hereby amended to provide for a fixed payment and add the post-petition mortgage arrearage plus the attorneys fees and costs in connection with Creditor's Motion for Relief from Stay.  The Creditor shall file a claim for :


2.     The Chapter 13 plan payments are hereby increased to $_____ _____.
3.     The fixed payments to the Creditor are increased to $_____ per month.
4.     The Motion for Relief from Stay and Co-Debtor Stay filed by CREDITOR is hereby conditionally denied.  However, should the Debtor fail to make any payment within thirty days from its due date beginning _____, the Motion for Relief from Stay is granted without further order of the Court.

Done this the ____ day of _____, 2005.


_____
United States Bankruptcy Judge

Prepared by:
Susannah R. Walker, Esquire
SIROTE & PERMUTT, P.C.
P. O. Box 55887
Birmingham, Alabama  35255-5887
Telephone:  (205) 930-5424


I:\Hildreth, James & Eldora(Washington Mutual)\MFR & Affidavit.doc DRAFT 11/23/05  11:05 AM

STATE OF    MINNESOTA                )

COUNTY OF  DAKOTA                    )

### AFFIDAVIT

BEFORE ME, the undersigned, Notary Public, personally appeared  GREG ALLEN  , who is known to me and after being by me first duly sworn, deposes and says the following:

My individual responsibility is to administer  mortgage loans in bankruptcy.  Specifically, this includes monitoring loan payments.  I hereby certify and state that said records were made in the regular course of business, and that it was in the regular course of said office for such records to be made at the time of the events, transactions, or occurrences to which they refer or within a reasonable time thereafter.  My personal knowledge of this mortgage loan shows the following:

|  |  |  |
|---|---|---|
| 1. | Loan No: | 8445769394 |
| 2. | Debtor: | James D. Hildreth |
| 3. | Bankruptcy Case No: | 05-80117-WRS-13 |
| 4. | Property Description: | 9 Redfield Drive, Phenix City, AL 36869 |
| 5. | Net Principal Balance as of 11/11/2005 | 80,985.53 |
| 6. | Delinquent Status as of 11/11/2005 | Due for payment |

| | |
|---|---|
| 3 payments of 685.38 each for Sep 1, 2005 through Nov 1, 2005 | 2,056.14 |
| 3 late charges of 27.42 each for Sep 1, 2005 through Nov 1, 2005 | 82.26 |
| Bankruptcy Attorney Fees for MFR | 650.00 |
| Total Post-petition Mortgage Arrearage | $2,788.40 |

The facts stated herein are true. In verification of the same, I subscribed my signature hereto.

Sworn to and subscribed before me on this the  11/8  day of  November , 2005.

_____

Affiant GREG ALLEN

Sworn to and subscribed before me on this the  11/8  day of  November , 2005.

_____
Notary Public
My Commission Expires: _____



JAMES C. MORRIS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2009

After recording return to
Phillips & Exell
P. O. Drawer 2500
Phenix City, AL 36868-2500
H-389/pav

VOL **1021** PAGE **C1**

ALBERT O. HOWARD JUDGE
THE 11 1999 2

99 JUL -8 PM 1: 36

FILED IN THE _____ OFFICE
RUSSELL CO _____ ALA.

For Assignment See Vol - 1021 pg 19

—[Space Above This Line For Recording Data]—

State of Alabama
AP# HILDRETH JAMES
LN# 4576939

## MORTGAGE

FHA Case No.

011-4497624-703

THIS MORTGAGE ("Security Instrument") is given on       June 28, 1999
The Grantor is   JAMES DAYTON HILDRETH, AND HIS WIFE and ELDORA BOUTWELL HILDRETH

("Borrower"). This Security Instrument is given to THOMASTON FEDERAL SAVINGS BANK

which is organized and existing under the laws of        UNITED STATES OF AMERICA        , and
whose address is 5617 PRINCETON AVENUE, COLUMBUS, GA 31904
                                                          ("Lender"). Borrower owes Lender the principal sum of
Eighty Six Thousand Seven Hundred Eighty Four and no/100
                                             Dollars (U.S. $ 86,784.00                    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on   July 1, 2029
            . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA Alabama Mortgage - 4/96

____-4R(AL) (9604).01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 8     Initials:_____     Initials:_____     *CH JDH*

Tax 130.40
Rec 20.20
Index 1.00
              $151.60

Dec of
Tax NO

**STATE OF ALABAMA**
**RUSSELL COUNTY**

Judge of Probate for said County, hereby certify
that the following privilege tax has been paid on
the within instrument as required by law
viz: $_____130_____ cts._____00_____

_____Albert O Howard_____
                              JUDGE OF PROBATE

VOL **1021** PAGE **02**

AP# HILDRETH JAMES     LN# 4576939
of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender and Lender's successors and assigns, with power of sale, the following described property located in                    RUSSELL                    County, Alabama:
SEE ATTACHMENT "A"

which has the address of 9 REDFIELD DRIVE, PHENIX CITY                    [Street, City],
Alabama          36869          [Zip Code] ("Property Address");

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

4R(AL) (9604).01                    Page 2 of 8                    Initials: _CH_
_JDH_

VOL 1021 PAGE 03

AP# HILDRETH JAMES    LN# 4576939

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

4(REAL) (9804).01                    Page 3 of 8                    Initials: _E H_
                                                                              _J O H_

VOL **1021** PAGE **C4**

AP# HILDRETH JAMES     LN# 4576939

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

4R(AL) (8504).01                    Page 4 of 8                    Initial: _____ EH
                                                                        JDH

VOL 1021 PAGE 05

AP# HILDRETH JAMES    LN# 4576939

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

-4R(AL) (9804).01                    Page 5 of 8                    JRH CH

VOL 1021 PAGE 06

AP# HILDRETH JAMES    LN# 4576939

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial action in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

CA&D-4RIAL1 1990041.01    Page 8 of 8    JDH  CH

VOL **1021** PAGE **07**

AP# HILDRETH JAMES     LN# 4576939

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 13. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in RUSSELL                                     County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following orders: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider                ☐ Growing Equity Rider           ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

(X)-4R(AL) (9608).01                          Page 7 of 8                          _JH_  _EH_

VOL **1021** PAGE **08**

AP# HILDRETH JAMES    LN# 4576939
BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____    *James Dayton Hildreth* (Seal)
JAMES DAYTON HILDRETH                                    -Borrower

_____    *Eldora Boutwell Hildreth* (Seal)
ELDORA BOUTWELL HILDRETH                             -Borrower

_____(Seal)    _____(Seal)
-Borrower                                                   -Borrower

_____(Seal)    _____(Seal)
-Borrower                                                   -Borrower

_____(Seal)    _____(Seal)
-Borrower                                                   -Borrower

STATE OF ALABAMA,                              Russell County ss:

    On this 28th        day of    June       , 1999    , I,
the undersigned authority                          , a Notary Public in and for said county and in said state,
hereby certify that  JAMES DAYTON HILDRETH and ELDORA BOUTWELL HILDRETH

                                                       , whose name(s)    are
signed to the foregoing conveyance, and who    are     known to me, acknowledged before me that, being
informed of the contents of the conveyance,    they    executed the same voluntarily and as  their
act on the day the same bears date.
    Given under my hand and seal of office this    28th       day of    June        , 1999

My Commission Expires: June 1, 2002

This instrument was prepared by                Notary Public    Jeffrey C. Ezell
JANE MAZURKIEWICZ

-4N(AL) (9604).01                  Page 6 of 8

VOL 1021 PAGE 09

EXHIBIT "A"

LOT 6, SYCAMORE SUBDIVISION, lying in Section 29, Township 17 North, Range 30 East, Russell County, Alabama, as shown upon a map or plat of said Subdivision prepared by Henry D. Moore, R.L.S., Ala. Reg. No. 2470, dated July 6, 1977, recorded in Plat Book 7, Page 273, now known as Plat Cabinet "E", Folio 25, in the Office of the Judge of Probate of Russell County, Alabama, which plat is incorporated herein and made a part hereof by this specific reference.

Said conveyance is made subject to all valid and enforceable easements and restrictions of record.

THIS IS A PURCHASE MONEY MORTGAGE

VOL. 1021 PAGE 10

STATE OF   ALABAMA    )
COUNTY OF  RUSSELL    )

ALBERT Q. HOWARD JUDGE
THE VR 1000 &

99 JUL -8 PH 1: 37

FILED IN THE PROBATE OFFICE
RUSSELL COUNTY, ALA.

ASSIGNMENT

FOR VALUE RECEIVED, Thomaston Federal Savings Bank

a corporation, organized and existing under the laws of the
United States of America has this date transferred, sold,
assigned, conveyed and set out to __HOMESIDE LENDING, INC.,__
__ITS SUCCESSORS AND/OR ASSIGNS__
as Assignee, its successors, representatives and assigns, all
right, title and interest in and to that certain Mortgage
executed by James Dayton Hildreth, and his wife, Eldora Boutwell Hildreth

dated, __June 28, 1999__, and recorded in Volume __1021__,
Page __01__, in the office of the Judge of Probate
Court of __Russell__ County, Alabama. Said Mortgage
was given to secure a note of even date in the original
principal amount of $__86,784.00__.

The Assignor herein specifically transfers, sells, conveys
and assigns, the aforesaid Mortgage, the property described
therein, the indebtedness secured thereby together
with all the powers, options, privileges and immunities
therein contained.

The Assignor herein has this day sold and assigned to the
Assignee herein the note secured by the deed to secure debt
and this transfer is made to secure the Assignee, its
successors, representatives and assigns, in the payment of
said note.

IN WITNESS WHEREOF, the Assignor has caused this conveyance
to be signed by __JOEL DUDLEY__, its __OFFICE__
__MANAGER__ on __June 28__, 19 99 .

Assignor:
Thomaston Federal
Savings Bank

By:
Joel Dudley,
Office Manager
(Corporate Seal)

STATE OF   Georgia   )
COUNTY OF  Muscogee  )

I, the undersigned, a Notary Public in for said county,
hereby certify that __Joel Dudley__ whose named as
__Office Manager__ of Thomaston Federal Savings Bank is
signed to the foregoing conveyance, and who is known to me,
acknowledged before me this day, that, being informed of the
contents of the conveyance, he/she such officer and with full
authority, executed the same voluntarily for and as the act
of said corporation.

Given under my hand and official seal on __June 28__, 19 99 .

Notary Public
Commission expires: __03/17/01__

ʙᴠᴏʟ 889 ᴘᴀɢᴇ 78

STATE OF ALABAMA
COUNTY OF RUSSELL

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that Gayla A. Corbett, whose name is signed to the foregoing conveyance and who is known to me, acknowledged before me this date that, being informed of the contents of the conveyance, she executed the same voluntarily on the date the same bears date.

Given under my hand and seal on this the 28th day of June, 1999.

_____
Notary Public
My Commission Expires:    June 1, 2002

(NOTARIAL SEAL)

THIS INSTRUMENT PREPARED BY:
Phyllis Wadkins
EMPLOYEE OF PHILLIPS & EZELL
P.O. Drawer 2500
Phenix City, AL 36868-2500

PHILLIPS & EZELL
ATTORNEYS AT LAW
703 - 13th STREET
P.O. DRAWER 2500
PHENIX CITY, AL 36868-2500
OFFICE   (334)297-2000
FAX      (334)297-2062

# UNITED STATES BANKRUPTCY COURT

## Middle District of Alabama

3:07CV209-u

In re:
**James D. Hildreth and Eldora B. Hildreth**
    Debtors

Case No.: 05−80117
Chapter: 13

---

## ORDER DENYING MOTION FOR WANT OF PROSECUTION

Upon consideration of the motion for relief from the stay by *Washington Mutual Bank* , a creditor, imposed by 11 U.S.C. § 362(a) the court concludes that more than forty−five (45) days have passed since the filing of the motion. The court further concludes that a proposed order encompassing a consent agreement has not been submitted to chambers nor has a motion to set the matter for hearing been filed as required by M.D. AL L.B.R. 4001−1. Accordingly, it is

**ORDERED**, that the motion for relief from the stay is **DENIED** for want of prosecution.

Dated:  1/12/06

William R. Sawyer
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION**

IN RE:                    }
HILDRETH, JAMES D.,    }   CASE NO:   05-80117-WRS-13
SSN xxx-xx-2111,        }
HILDRETH, ELDORA      }
SSN xxx-xx-2558,        }
     Debtor.            }   3:07CV 209-wha

**MOTION TO SET ASIDE ORDER DENYING MOTION FOR RELIEF AND REQUEST**
**TO SET HEARING**

COMES NOW, WASHINGTON MUTUAL BANK by and through its undersigned counsel of Sirote & Permutt, PC, and moves the Court to set aside the denial of Creditor's Motion for Relief.

1.    The Creditor filed a Motion for Relief on 11/23/2005 which indicated that Creditor would consider entering into an agreement on the Motion for Relief.

2.    The Chapter 13 case was dismissed on 11/29/2005..

3.    The Debtors filed a motion to reinstate the case, which was set for hearing on 1/18/2006.

4.    Creditor did not request that a hearing be set within the 45 day time period because the case was dismissed.

5.    The Motion for Relief was denied on 1/12/2006.

6.    The Chapter 13 case was reinstated on 1/24/2006.

7.    The Creditor and Debtor's attorney have been in discussions regarding a possible settlement of the Motion because the case was reinstated.

8.    To date, no agreement has been approved by all parties.

9.    The Debtors are currently post-petition due for the October, 2005 payment forward through the current date.

DOCSBHM\1375210\1\

WHEREFORE, PREMISES CONSIDERED, the Creditor would ask this Honorable Court to set aside the order denying the Motion for Relief and to set a hearing on the Motion for Relief.

Respectfully submitted,

_SRWalker_
Susannah R. Walker (WAL158)
Attorney for Creditor
2311 Highland Avenue South, Suite 500
Birmingham, AL 35205
205/930-5424

## CERTIFICATE OF SERVICE

I hereby certify in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004 that a copy of the above and foregoing Motion was mailed, first class postage prepaid or served via electronic case management to:

| | | |
|---|---|---|
| F. Patrick Loftin | James D. Hildreth | Curtis C. Reding |
| P O Box 2566 | Eldora B. Hildreth | P.O. Box 173 |
| Phenix City, AL 36868-2566 | 9 Redfield Drive | Montgomery, AL 36101 |
| | Phenix City, AL 36869 | |

On this the _26_ day of _Jan_, 2006.

_SRWalker_
OF COUNSEL

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| IN RE: | } |
| HILDRETH, JAMES D., | }    CASE NO:    05-80117-WRS-13 |
| SSN xxx-xx-2111, | } |
| HILDRETH, ELDORA | }    3:07CV 209- wha |
| SSN xxx-xx-2558, | } |
| Debtor. | } |

### ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY
### FILED BY WASHINGTON MUTUAL BANK

This matter coming before the Court on the Motion for Relief from Automatic Stay filed by WASHINGTON MUTUAL BANK (hereinafter "Creditor"), and this Court being informed of the agreement of the parties hereto, it is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

1.    The Order entered on January 12, 2006 is hereby set aside.

2.    The Chapter 13 plan is hereby amended to provide for a fixed payment and add the post-petition mortgage payments through Febuary, 2006 plus the attorneys fees and costs in connection with Creditor's Motion for Relief from Stay. The Creditor shall file a claim for that amount.

| | |
|---|---|
| 3 payments @ $685.38 for 11/05 through 01/06: | $2,056.14 |
| 1 payment @ $703.23 for 2/06: | $ 703.23 |
| 4 late charges @ $27.42 for 11/05 through 02/06: | $ 109.68 |
| Minus partial payment: | ( $ 31.62) |
| Attorney Fees and Costs for MFR: | $ 650.00 |
| Total: | $3,487.43 |

3.    The Creditor shall file an amended pre-petition and post-petition claim for **TOTAL ARREARAGE** of $7,246.63.

4.    The Chapter 13 plan payments are hereby increased to $72.00 WEEKLY.

5.    The fixed payments to the Creditor are increased to $225.00 per month.

6.    The Motion for Relief from Stay filed by WASHINGTON MUTUAL BANK is hereby conditionally denied. However, should the Debtor fail to make any payment within thirty days from its due date beginning March, 2006, the Motion for Relief from Stay is granted without further order of the Court. Further, the Creditor is allowed to communicate with the Debtor(s) any communication required under the note and mortgage or under state law. Waiver of default shall not constitute waiver of subsequent default.

Done this the 7th day of March, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

Prepared by:
SUSANNAH WALKER, Esquire
SIROTE & PERMUTT, P.C.
P.O. Box 55887
Birmingham, Alabama 35255-5887
Telephone: 205-930-5424
This order was approved by F. Patrick Loftin and Sabrina McKinney.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                    )
    JAMES D. HILDRETH,         )        CHAPTER 13
    ELDORA B. HILDRETH,        )        CASE NO. 05-80117
                     )        3:07 CV 209 wh.
      Debtors.                      )

## MOTION FOR CONTEMPT

**COME NOW** the Debtors, and would request the Court to hold the creditor, Washington Mutual in Contempt of Court and would respectfully show unto the Court as follows:

1.    That Your Debtors filed their Chapter 13 case on the January 26, 2005.

2.    That Washington Mutual was listed as a creditor, secured by a first mortgage on the residence of the Debtors.

3.    That the Court entered an Order on Motion for Relief from Automatic Stay filed by Washington Mutual Bank, on the 7th day of March, 2006.

4.    In said Order it was agreed that the post-petition arrears for the months of November thru February, were placed under the bankruptcy plan. The Debtors were to begin making payments beginning with the March, 2006 payment.

5.    That the Debtors have made all payments that would have become due within 30 days of the due date.

6.    That attached hereto is a letter dated the 14th day of September, 2006. The said creditor requested that the Debtor send copies of cancelled checks to said creditor. They state in the letter that they are a debt collector and they are attempting to collect a debt. Said letter is attached hereto as Exhibit "A."

7.    That attorney for the Debtors sent a letter dated September 26, 2006 to said creditor with a copy of cancelled checks and an explanation that the clients were not in default on their loan or in violation of the order denying the Motion for Relief from the Automatic Stay.  Said letter is attached hereto as Exhibit "B."

8.    On October 16, 2006 the said creditor sent a letter to the Debtors to collect any back payments on the debt.  They specifically state that they are a debt collector and they are attempting to collect a debt.  Said letter is attached hereto as Exhibit "C."

9.    That agents or representatives on behalf of Washington Mutual have contacted the Debtors by telephone on numerous occasions threatening to foreclose on their home, locking the doors to their house and selling their personal property to pay any debt owed by the Debtors to said creditor.

10.    All of the actions taken by Washington Mutual have been in willful contempt of Court and in direct violation of the automatic stay.

11.    That the Court should award a reasonable attorney's fee for services rendered on behalf of the Debtors and find the said  creditor in contempt of Court.

**WHEREFORE,** the premises considered, the Debtors would request the Court to find the creditor, Washington Mutual in Contempt of Court, award damages for emotional distress, award a reasonable attorney's fee for services rendered on behalf of the Debtors and prosecuting this action, and award such other, further, and additional relief as to which the Debtors would be entitled and for which they would ever pray.

LOFTIN, LOFTIN & HALL

BY:/s/ *F. Patrick Loftin*
      F. PATRICK LOFTIN (LOF006)
      ATTORNEY FOR DEBTORS
      P.O. BOX 2566
      PHENIX CITY, AL  36868-2566
      (334) 297-1870

## CERTIFICATE OF SERVICE

    This is to certify that I have on this day served the following with a copy of the above by depositing a copy of same in a preaddressed, stamped envelope with adequate postage prepaid thereon and properly addressed to them:

A.    Hon. Curtis Reding, Trustee    (by Internet)
      P.O. Box 173
      Montgomery, AL  36101-0173

B.    Washington Mutual
      P.O. Box 3139
      Milwaukee, WI  53201-3139

C.    Susannah Walker
      Attorney for Washington Mutual
      P.O. Box 55887
      Birmingham, AL  35255-5887

This the 3rd day of November, 2006.

/s/ F. Patrick Loftin
      OF COUNSEL

**EXHIBIT A**

**Ⓦ Washington Mutual**

September 14, 2006

JAMES D HILDRETH
ELDORA B HILDRETH
9 REDFIELD DR
PHENIX CITY AL 36869

RE: Loan #    8445769394

**We are a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.**

Dear Mortgagor:

You recently indicated that there is a discrepancy with your account. In order to better serve you, please help us investigate your inquiry further by providing copies of the payment(s) in question. We ask that you mail or fax a legible photocopy of the front and back of your cancelled pay instrument(s) (i.e. check, money order, etc.) to the following:

> **WASHINGTON MUTUAL**
> **ATTN: CORRESPONDENCE**
> **P.O. BOX 3139**
> **MILWAUKEE, WI  53201 – 3139**

Please continue to send regular monthly payments minus the payment(s) in dispute until we have completed the research on the payment(s) in question. Our number is 866-926-8937.

**Please Note**: Your account is presently **due for 5/01/06**. We can not assist you if you do not assist us. The delinquency of your account will require referral to our foreclosure attorney by 9/29/06 if we do not receive evidence of the disputed payment by 9/28/06. In addition, all payments not in dispute must be received by 9/28/06 as well.

Sincerely,

Default Customer Interaction Center

JB



**EXHIBIT B**

## LOFTIN, LOFTIN & HALL
ATTORNEYS AT LAW
1705 - 7TH AVENUE
P.O. BOX 2566
PHENIX CITY, ALABAMA 36868-2566

September 26, 2006

TELEPHONE    (334) 297-1870
FAX          (334) 291-7887

SAM E. LOFTIN
F. PATRICK LOFTIN
JAMES E. HALL

Washington Mutual
Attn: Correspondence
Default Customer Interaction Center
P.O. Box 3139
Milwaukee, WI 53201-3139

RE:   **James and Eldora Hildreth**
      **Loan Number:  8445769394**

Dear Sir or Madam:

I represent the above referenced individuals. My clients have brought me a letter dated September 14, 2006 from your company. My clients are currently under a Chapter 13 plan. In my opinion, the stay has not been lifted. However, pursuant to your request in your letter we are forwarding you copies of checks which should prove that my client is not in default of the order denying your relief from automatic stay.

According to the Order, my client was to begin making payments beginning with the March, 2006 payment. November thru February, 2006 was placed under the plan. Therefore, the February 14, 2006 payment of $717.00 would have been for the March, 2006 payment. The March 14, 2006 payment would have been for April. The March 31, 2006 payment would have been for May. The May 22, 2006 payment would have been for June. The July 21, 2006 payment of $1,438.60 would have been for July and August. My client is currently due for September and is making that payment within the next day or two.

If you have any questions or comments, please feel free to contact me.

Sincerely,

F. Patrick Loftin
FPLOFTIN@BELLSOUTH.NET

FPL/lld

Enclosures



# REGIONS ▲
### BANK

P O BOX 550
PHENIX CITY AL   36868-0550

BANK USE ONLY
013    2 ʼ 2 1311

ACCOUNT NUMBER
13- 0326-1419

ELDORA SISSY HILDRETH
704 12TH ST
PHENIX CITY AL 36867-5818

CLOSING DATE
03/17/2006

PAGE    2 OF    2





No.689               $717.00        No.691            $1,900.00



# REGIONS
### BANK

P O BOX 550
PHENIX CITY AL  36868-0550

BANK USE ONLY
013    2    2 1311

ACCOUNT NUMBER
13-0326-1419

ELDORA SISSY HILDRETH
704 12TH ST
PHENIX CITY AL 36867-5818

CLOSING DATE
06/19/2006

PAGE    2 OF    2





No.695                    $719.30         No.696                    $40.00



**REGIONS** △
BANK

P O BOX 937
GAINESVILLE GA  30503

BANK USE ONLY
013    1    1,131

ACCOUNT NUMBER
13-0326-1419

CLOSING DATE
08/17/2006

ELDORA SISSY HILDRETH
704 12TH ST
PHENIX CITY AL 36867-5818

PAGE  2 OF  2

No. 697                          $1,438.60

Washington Mutual

EXHIBIT C

LB160

October 16, 2006

James D Hildreth
Eldora B Hildreth
9 Redfield Dr
Phenix City, AL 36869-2601

<u>WE ARE A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT,
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.</u>

<u>WE HAVE TOLD A CREDIT BUREAU ABOUT A LATE PAYMENT, MISSED PAYMENT
OR OTHER DEFAULT ON YOUR ACCOUNT. THIS INFORMATION MAY BE
REFLECTED IN YOUR CREDIT REPORT.</u>

RE: Loan Number: 8445769394
    Property Address: 9 Redfield Dr
                      Phenix City AL 36869

Dear Valued Customer(s):

You have indicated a desire to participate in one of our workout
programs. Per your request, you were sent a Financial Application
on 09/14/2006 to complete and return in order to be considered for
this program. We have yet to receive your completed application. A
follow-up letter was sent on 09/14/2006. Since that time, we have not
received a response from you. Washington Mutual is still willing to
consider any option that may be available to prevent foreclosure on
your home. However, time is of the essence; you must act now. If you
are still interested in assistance, please complete the application
and return immediately.

If the completed Financial Application is not received in this office
within 15 days of the date of this letter, we will consider this a
cancellation of your request and will close out your file. Also
during this time, normal collection and foreclosure activity will
continue uninterrupted. If during this time the foreclosure process
is completed without receipt of your information, your request for
assistance will be denied.

If you have returned the application within the last 5 days, please
disregard this notice.

If you have any questions, please call us toll free at 1-866-926-8937,
Monday through Friday, 8:00 a.m. to 6:00 p.m., Eastern Time.

Thank you,

Loss Mitigation Department
Washington Mutual Bank          LM-LB160-006-aRS.4992.092105



# UNITED STATES BANKRUPTCY COURT

## Middle District of Alabama

In re:
**James D. Hildreth and Eldora B. Hildreth**
    Debtors

Case No.: 05–80117
Chapter: 13

*3:07CN 209- WH*

## NOTICE

PLEASE TAKE NOTICE that a hearing will be held at

U.S. Bankruptcy Court, George W. Andrews Federal Building, 701 Avenue A, Opelika, AL 36801

on 12/6/06 at 10:00 AM

to consider and act upon the following:

*28* – Motion For Contempt Filed by F. Patrick Loftin on behalf of Eldora B. Hildreth, James D. Hildreth.
(Attachments: # (1) Exhibit Exhibti A# (2) Exhibit Exhibit B# (3) Exhibit Exhibit C) (Loftin, F.)

Dated:  11/6/06

Richard S. Oda
Clerk, U.S. Bankruptcy Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                    )
    JAMES D. HILDRETH,                )        CHAPTER 13
    ELDORA B. HILDRETH,               )        CASE NO. 05-80117
                    )        *3:07CV209 wha*
       Debtors.                       )

## AFFIDAVIT OF TIME EXPENDED ON MOTION FOR CONTEMPT

**COMES NOW**, F. Patrick Loftin and after being duly sworn submits his

Statement of Time Expended on the Motion for Contempt against Washington Mutual

as follows:

| | | |
|---|---|---|
| 09/20/06 | Telephone conference with client about letter from Washington Mutual | .5 |
| 09/26/06 | Conference with client and review of cancelled checks and preparation of letters to Washington Mutual | 1.0 |
| 09/29/06 | Telephone call from client that Washington Mutual is calling him | .3 |
| 10/05/06 | Telephone call from client that Washington Mutual is calling him | .3 |
| 10/06/06 | Telephone call from client Washington Mutual is calling him | .3 |
| 10/20/06 | Meet with client about letter from Washington Mutual | .5 |
| 11/03/06 | Prepared Motion for Contempt reviewed exhibits and research 11 USC§362 | 1.2 |
| 12/06/06 | Travel to Court | .8 |
| 12/06/06 | Meet with client before Court | .5 |
| 12/06/06 | Court time | .8 |
| 12/06/06 | Travel from Court | .8 |
| 12/08/06 | Preparation of time statement | .6 |

Time Expended                                            7.60 hours


                                        LOFTIN, LOFTIN & HALL

                              BY:     /s/ F. Patrick Loftin_____
                                      F. PATRICK LOFTIN (LOF006)
                                      ATTORNEY FOR DEBTOR
                                      P.O. BOX 2566
                                      PHENIX CITY, AL  36868-2566
                                      (334) 297-1870


        Sworn to and subscribed before me a Notary Public this the 11th day of
December, 2006.



                                      /S/ Lori L. Davis_____
                                      NOTARY PUBLIC
                                      My Commission Expires:
                                      June 8, 2010

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

JAMES D. HILDRETH and
ELDORA B. HILDRETH,

              Debtors.

Case No. 05-80117-WRS
Chapter 13

*3:07CV 209- wha*

## ORDER IMPOSING SANCTIONS AGAINST WASHINGTON MUTUAL FOR VIOLATION OF THE AUTOMATIC STAY

     Pursuant to the Court's Memorandum Decision of this date, sanctions in the form of money damages are awarded in favor of the Debtors and their counsel and against Washington Mutual in the amount of $28,900.00. In addition, Washington Mutual shall repay to the Chapter 13 Trustee, the sum of $2,944.77.

     Done this the 14th day of December, 2006.

                                     /s/ William R. Sawyer
                                     United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

JAMES D. HILDRETH and
ELDORA B. HILDRETH,

        Debtors.

Case No. 05-80117-WRS
Chapter 13

3:07CV 209-whc

### MEMORANDUM DECISION

    This Chapter 13 bankruptcy case came before the Court for hearing on December 6, 2006, on the Debtors' motion seeking sanctions against Washington Mutual for violating the automatic stay.[1] (Doc. 28). The Debtors were present in court and by counsel F. Patrick Loftin. Washington Mutual did not appear.

### I. FACTS

    The Debtors filed a joint petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on January 26, 2005. (Doc. 1). Washington Mutual holds a mortgage on the Debtors' residence, which was in arrears at the time the petition in bankruptcy was filed. The Debtors filed a Chapter 13 Plan which proposed to cure the mortgage delinquency and maintain current payments. The Debtors subsequently defaulted in their obligation to make monthly mortgage payments, and Washington Mutual moved for relief from the automatic stay. (Doc. 13). The Debtors negotiated an adequate protection agreement with Washington Mutual which was made in the form of an Agreed Order. (Doc. 26).[2]

---

    [1] The motion is cast in terms of one for contempt of court. The Court has construed the motion as one for violation of the automatic stay pursuant to 11 U.S.C. § 362(k).

    [2] The actual sequence of events was a little more complicated than this. On January 12, 2006, the Court originally denied Washington Mutual's motion for relief from the automatic stay, because it did not timely forward its agreed order to the Court. (Doc. 21; see also, LBR 4001-1). Washington Mutual then moved to set aside the January 12, 2006 Order. (Doc. 23).

On November 3, 2006, the Debtors filed their instant motion seeking sanctions against

Washington Mutual. (Doc. 28). Washington Mutual wrote the Debtors on September 14, 2006,

October 16, 2006, and November 28, 2006. The gist of the problem is set forth in Loftin's letter

of September 26, 2006 (Doc. 28, Ex. B), which he wrote in response to Washington Mutual's

September 14, 2006 letter.. In his letter, Loftin explained why he believes the Debtors are

current in their obligations to Washington Mutual and why the automatic stay had not terminated

pursuant to the terms of the March 7, 2006 Order.[3] In addition, Loftin attached copies of bank

account records supporting his claims. On October 16, 2006, Washington Mutual sent the

Debtors a letter demanding that they submit a financial statement and threatening foreclosure of

their mortgage. Washington Mutual did not respond to Loftin's letter, and it continued to

contact the Debtors directly.

James Hildreth testified that he received approximately sixty telephone calls from

Washington Mutual, some of which were threatening and abusive and which caused Hildreth and

---

Also complicating matters, this Chapter 13 case was dismissed for nonpayment of Chapter 13
Plan payments on November 29, 2005. (Doc. 15). The Debtors moved to reinstate the case.
(Doc. 19). On January 24, 2006, this Court vacated its order of dismissal and reinstated this
case. (Doc. 22). After the Court reinstated this case, Washington Mutual moved to set aside the
January 12, 2006 Order. (Doc. 23–motion, Doc. 22–order). On March 7, 2006, an adequate
protection order was entered by agreement. (Doc. 26).

[3] The Agreed Order contains a conditional denial provision, which is sometimes called a
"drop dead" provision. Under a "drop dead" order, the automatic stay terminates without further
judicial proceedings a given number of days after a subsequent default. A common criticism of
drop dead orders is that it is impossible to determine from the court's records whether the
automatic stay is in fact in effect. In this case, Washington Mutual did not give any indication
that it was of the view that the automatic stay had terminated pursuant to its "drop dead" order.
As the Court has found in this case that the Debtors were not in default, it follows that the
automatic stay did not terminate pursuant to the "drop dead" provision in the March 7, 2006
Order. (Doc. 26).

his wife to suffer distress. These telephone calls were received both at home and at Hildreth's

place of employment. Hildreth testified that he advised Washington Mutual that he was

represented by counsel and that Loftin had taken care of this matter. Hildreth further testified

that he was told by representatives of Washington Mutual that they were not going to talk to

Loftin. Moreover, Hildreth advised Washington Mutual of his bankruptcy filing, but his pleas

were ignored. Hildreth testified that he was current in his mortgage payments since entry of the

adequate protection order, and the Court finds that he is.

On November 28, 2006, only days before the evidentiary hearing on the Debtors' motion,

Washington Mutual again wrote to the Debtors. (Debtors' Ex. D). It is clear from the language

of this letter that Washington Mutual had ignored Lofton's September 28 letter. The letter

further states that foreclosure proceedings will be initiated on December 8, 2006, if the

nonexistent mortgage delinquency was not cured.

## II.  CONCLUSIONS OF LAW

The Court will discuss three legal issues here. First, the Court will consider its

jurisdiction to hear this contested matter. Second, the Court will consider whether the conduct of

Washington Mutual  violated the automatic stay. Third, the Court will consider whether

compensatory damages, punitive damages and attorney's fees should be awarded.

### A.  Jurisdiction

The Debtors seek to enforce the automatic stay and seek an award of compensatory and

punitive damages for Washington Mutual's violation. This Court has jurisdiction to hear this

matter pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(G). The

Debtors have elected to bring this matter before the Court by way of a contested matter, or

motion, rather than by way of an adversary proceeding. Cf. FED. R. BANKR. P. 9014; FED. R. BANKR. P.7001 (setting forth rules governing Adversary Proceedings and Contested Matters). The rules governing Adversary Proceedings are more elaborate, incorporating in many aspects the rules governing a civil action, whereas the rules governing a contested matter are more streamlined. The Debtors are properly proceeding by way of motion and need not have filed an Adversary Proceeding. See In re LTV Steel Co., Inc., 264 B.R. 455, 462-63 (Bankr. N.D. Ohio 2001) (holding that the stay violation was properly before court on motion rather than adversary proceeding); see also, In re Timbs, 178 B.R. 989, 994 (Bankr. E.D. Tenn. 1994) (holding that sanctions may be imposed pursuant to § 362(h) by way of motion rather than complaint).

## B. Violation of the Automatic Stay

The Court will next consider whether the repeated telephone calls and the several letters from Washington Mutual constitute a violation of the automatic stay. Upon the filing of a petition in bankruptcy, a stay of "any act to collect, assess, or recover a claim against the debtor that arise before the commencement of the case under this title." 11 U.S.C. § 362(a)(6); see also, Baird v. U.S. (In re Baird), 319 B.R. 686, 689 (Bankr. M.D. Ala. 2004) (Williams, J.) (holding that the Internal Revenue Service willfully violated the automatic stay by sending collection letters to the debtor); Smith v. Homes Today, Inc. (In re Smith), 296 B.R. 46, 53 (Bankr. M.D. Ala. 2003) (Sawyer, J.) (holding that the repossession of a mobile home violated the automatic stay). In the case at bar, Washington Mutual's continued dunning of the Debtors was a violation of the automatic stay.

-4-

### C. Damages

Having determined that Washington Mutual violated the automatic stay, the Court will next consider whether the Debtors should be awarded damages. Section 362(k)(1) of the Bankruptcy Code provides, in part, as follows:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

Damages will not be awarded unless the violation of the automatic stay was willful. 11 U.S.C. § 362(k). "A willful violation of the automatic stay does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) [now 362(k)] is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." In re Smith, 296 B.R. at 55 (citing Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999)). In the case at bar, Washington Mutual certainly knew of the Debtors' bankruptcy filing as they had previously filed a motion for relief from the automatic stay. (Doc. 13). Thus, the violation of the automatic stay in this case was willful, and damages should be awarded.

Damages in cases such as this are not easily quantified. Repeated telephone calls and letters from the holder of a mortgage on one's home undoubtedly disturb the peace and tranquility of the Debtors and their family. One might look out one's window and see an inebriated person driving a bulldozer toward their house. The knowledge that the driver of the bulldozer should not be doing what he is doing does not eliminate the distress. In the case at bar, the Debtors knew that they were in bankruptcy, knew that they had hired counsel, knew that

counsel had taken care of the problem with their mortgage delinquency, and nevertheless, the bulldozer continued unabated.  Indeed, if Washington Mutual carries through with its threat, foreclosure proceedings are in the works as the Court is rendering this order.[4]  The Court will award actual damages in the amount of $100.00 per telephone call and $1,000.00 for each of the three letters.  Hildreth testified that he had received approximately sixty telephone calls, and along with the three letters before the Court, bring the total to $9,000.00.

The Court will next consider whether punitive damages are appropriate.  Given the facts of this case, it would appear that they are.  Washington Mutual was first in line to vindicate its rights in this case.  It has two attorneys of record who received copies of every filing, including the Debtors' motion for sanctions and this Court's Notice of Hearing.  Moreover, Washington Mutual filed a mortgage delinquency claim in the amount of $3,759.20, which has all been paid except for $814.43. (Claim No. 1).  From time to time, the Court will experience a creditor who chooses to ignore the bankruptcy filing and proceeds as if the bankruptcy case does not exist.  However, this Court has never before experienced a creditor who files a motion for relief from the automatic stay, negotiates an adequate protection order, which leaves the automatic stay in place, and then wilfully violates the automatic stay whose existence was carefully negotiated in the adequate protection order.  The Court will stress that it is not imposing punitive damages for a single violation of the automatic stay.  Rather, this is a pattern of conduct. What is particularly vexing here is that Washington Mutual has quite aggressively, but properly, used the facilities of

---

[4] To be sure, if Washington Mutual is going forward with foreclosure proceedings as threatened, they are void.  Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 675 (11th Cir. 1984); Borg-Warnter Acceptance Corp. v. Hall, 685 F.2d 1306, 1308-09 (11th Cir. 1982).

this Court in an effort to collect what it is due. Yet, when it served its purposes, Washington

Mutual has quite brazenly ignored both the automatic stay and well settled Federal law, with

which it is quite familiar.[5] For this reason, the Court will impose punitive damages in the

amount of $18,000.00, twice the amount of the actual damages. As an additional penalty, the

Court will order Washington Mutual to repay to the Chapter 13 Trustee, the sum of $2,944.77,

which is the amount it has been paid by the Chapter 13 Trustee on its claim.

The Court is mindful that the imposition of punitive damages requires a delicate balance.

On the one hand, if the damages are too small, large creditors may not be deterred, reasoning that

for every award of punitive damages they may have a number of cases in which their conduct is

not challenged. The Court must make sure that it is not cost effective to wilfully violate the

automatic stay. On the other hand, too large of an award of punitive damages may violate rights

to due process. The Court is further hampered in this case, because Washington Mutual elected

not to attend the hearing, depriving the Court of what may well have been valuable input. While

an award of $18,000 in punitive damages is substantial, in its opinion, under the facts of this case

it is appropriate. See Solfaneli v. Corestates Bank N.A., 203 F.3d 197, 203 (3d Cir. 2000)

(affirming the bankruptcy court's award of $10,000.00 punitive damages and holding that once

the bankruptcy court finds a wilful violation of the stay, "it has discretion to impose punitive

damages in 'appropriate circumstances'").

---

[5] Washington Mutual was sanctioned for violation of the automatic stay in a case handed down by a Bankruptcy Court in California earlier this year. See Dawson v. Washington Mutual (In re Dawson), 346 B.R. 503 (Bankr. N.D. Cal. 2006) (finding that Washington Mutual wilfully violated the automatic stay and ordering it to pay $27,440.00 in damages and $156,818.75 in attorneys' fees) (appeal pending).

At the conclusion of the hearing, the Court instructed Debtor's counsel to submit an affidavit detailing his attorney's fees.  On December 11, 2006, Loftin filed an Affidavit showing that 7.6 hours had been spent on this matter.  (Doc. 30).  Having considered Loftin's affidavit and given the Court's familiarity with this case, the Court finds that the time spent was reasonable.  Debtor's counsel F. Patrick Loftin has been practicing law for 20 years, and he practices regularly in this Court.  The Court is familiar with both Loftin's skill as a bankruptcy lawyer and his dedication to his clients' cases.  An hourly rate of $250.00 is appropriate here. The Debtors are awarded attorney's fees in the amount of $1,900.00.

### III.  CONCLUSION

For the reasons set forth above, the Court awards Debtors actual damages in the amount of $9,000.00 and punitive damages in the amount of $18,000.00  In addition, Washington Mutual is required to return to the Chapter 13 Trustee the sum of $2,944.77, which it has previously been paid.  As a final matter, the Court awards Debtors' counsel F. Patrick Loftin $1,900.00 for his attorney's fees which shall be paid by Washington Mutual.      Pursuant to Bankruptcy Rule 9022, the Court will enter a final order by way of a separate document.

Done this the 14th day of December, 2006.


/s/ William R. Sawyer
United States Bankruptcy Judge


-8-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| IN RE: | } **CASE NO:** 05-80117-WRS |
| | } |
| Hildreth, James D. | } **CHAPTER:** 13 |
| Hildreth, Eldora B. | } |
| | } |
| **Debtor(s)** | } 3:07CV 209 -Wha |
| Soc.Sec.No(s).: xxx-xx-2111 | } |
| xxx-xx-2558 | |

## MOTION FOR RECONSIDERATION AND/ OR TO SET ASIDE THE COURTS ORDER ENTERED DECEMBER 14, 2006 RELATING TO THE DEBTOR'S MOTION FOR CONTEMPT

Comes now WASHINGTON MUTUAL BANK, its principals, investors, successors, and/or assigns, if any, (hereinafter "Creditor"), by and through its undersigned counsel of record, Sirote & Permutt, P.C., and requests that this Honorable Court reconsider the Debtor's Motion for Contempt and set aside the Order Imposing Sanctions and the Memorandum Decision entered on December 14, 2006, Creditor avers as follows:

### IMPROPER SERVICE

1. The Debtor filed a Motion for Contempt on November 3, 2006. According to Federal B. R. Rule 9020, contempt proceedings are governed by Federal B.R. Rule 9014 as a contested matter.

2. Federal B.R. Rule 9014 (b) provides that the motion for contempt be "served in the manner provided for service of summons and complaint by Federal B.R. Rule 7004."

3. Federal B.R. Rule 7004(b) (3) provides for service on a corporation by mailing by first class mail "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires by also mailing a copy to the defendant."

4.    The Debtor's Motion for Contempt was attempted to be served on Washington Mutual at P.O. Box 3139, Milwaukee, WI 53201-3139. The Motion was not sent "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires by also mailing a copy to the defendant" as required by Rule 7004. The rules clearly contemplate that a "living person" be named. The reasoning for such a requirement is clear in that when a live person is served, due process has been fulfilled. Service to a person would also prevent the result that occurred in this case where a piece of mail with no name on it is delivered to an incorrect P.O. Box. As a result, the service of the Motion for Contempt did not comply with the Bankruptcy Rules.

5.    Further, the motion was not served on Washington Mutual at the address listed in the Notice of Appearance filed on April 28, 2005 by Gene R. Clark on behalf of Washington Mutual.

6.    Although electronic notice was received by Sirote and Permutt at the address specified for electronic service, it was not discovered until after the Court's order was entered since our file was closed and we had completed all legal work for which we were initially retained. We were retained to file a motion for relief for the Creditor. Sirote filed the motion and obtained a conditional order. At that time our representation of the mortgage company in this matter ended until we were retained to represent Washington Mutual concerning this motion. Our office receives thousands and thousands of electronic notices of any and all filings that occur in any pending case in which we have taken any action. Generally, our office notifies clients when any request or motion from the debtor's attorney is received. However, we cannot monitor each pleading filed in each and every case in which we have filed a motion for a Creditor. The fact that our office received

the notice does not perfect service on Washington Mutual pursuant to the Federal Bankruptcy Rules as set out above.

7. As the Court pointed out in the order we had previously appeared on behalf of Washington Mutual and worked out an agreement with Debtor's counsel. However, the Debtor's counsel did not contact our office about any of the issues involved prior to filing the motion. We were not given any indication that a motion with such serious allegations had been filed, despite the fact that we had communicated with Debtor's Counsel concerning numerous other files during the interim. No representation is being made that Counsel had any legal duty to notify Sirote & Permutt. If we had been made aware of this matter, it could have likely been resolved much more amicably and fostered judicial economy. Most certainly there would have been no default.

8. If Washington Mutual had been properly served with the Debtor's motion, then the Creditor would have attended the hearing and vigorously defended the motion.

9. Regardless of how the Court has determined to treat the nature of the motion, it is clearly a contested matter. Therefore, the service requirements of Federal B.R. 7014 and Federal B. R. 7004(b)(3) apply. The Debtor's Motion before the Court failed to comply with the Federal Bankruptcy Rules.

## ADVERSARY PROCEEDING

10. Debtor's motion for contempt was filed to obtain damages and attorney fees from the Creditor. Rule 7001 provides that a "proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002," **shall** be brought as an adversary proceeding. As a request to recover money, the Debtor's motion should have been filed as an Adversary Proceeding.

11. The extraordinary nature of the relief sought for money damages warrants the due process requirements of an adversary proceeding. Further, in a case such as this

DOCSBHM\1455098\1\ DRAFT 12/21/06 3:44 PM

one where the Court goes beyond awarding a movant a mere monetary sanction but in addition awards **punitive damages,** an Adversarial Proceeding is the only mechanism provided under the Federal Bankruptcy Rules to adjudicate such matters. Otherwise the "defendant," although there was no "defendant" in the case at hand, cannot adequately "defend" itself. Another complicating factor of conducting such serious litigation by way of a motion as occurred here is that the "plaintiff"/movant has no ability to obtain a judgment. This could hinder the Debtor's ability to collect whatever damages a Court may enter.

12. Local Rule 9020-1 requires that "proceedings which allege a violation of the automatic stay or the discharge injunction shall be brought by motion or adversary proceeding and not under this rule."

13. The Debtor filed the motion as a Motion for Contempt which alleges violation of the stay in contradiction of the local rule. Therefore the motion was improperly filed.

## NO VIOLATION OF STAY

14. Finally, Creditor objects to the factual allegations of the Debtor's motion.

15. The Motion for Relief was filed on 11/23/2005. The Chapter 13 case was dismissed on 11/29/2005 and subsequently reinstated on 1/24/2006. A hearing was set on 2/22/2006. An agreement was reached on the motion for relief and a proposed order was sent to debtor's attorney on 2/21/2006. The conditional order on motion for relief was entered on March 7, 2006. The order at issue requires the Debtor to resume direct payments with the March, 2006 payment.

16. At the time the motion was settled, Washington Mutual had received check #689 which was applied to the October, 2005 payment to reduce the arrearage being added to the plan.

17. The conditional order was prepared using the current post-petition status of payments through that date, and the debtor's attorney was notified of the payment

DOCSBHM\1455098\1\ DRAFT 12/21/06 3:44 PM

application. Please see attached "Exhibit A" which is the e-mail to the Debtor's attorney notifying him of the payment received in February, 2006 and how the payment was applied.

18. As a result, the first payment received after the settlement of the motion was applied on March 24, 2006 and applied to the March, 2006 payment.

19. The payment applied on 4/12/2006 was applied to the April, 2006 payment.

20. The payment applied on 6/5/2006 was applied to the May, 2006 post-petition payment.

21. The June, 2006 payment was not timely tendered.

22. There appears to have been no payment made in August, 2006.

23. As a result, the debtor defaulted under the conditional order and relief was granted for Washington Mutual. Relief was granted under the order before collection proceedings began.

24. A reading of the Court's order indicates testimony was taken in the hearing. Washington Mutual vigorously denies the allegations and testimony that occurred.

25. Washington Mutual has numerous defenses to this proceeding and it would be manifestly unfair for Washington Mutual to have to pay such a large sanction, ordered by default, when Washington Mutual has valid defenses to the proceeding and was not properly served and had no chance to defend. Washington Mutual represents unto this Honorable Court that if it is allowed to defend itself from the allegations in the Debtor's motion that is has a substantial likelihood of prevailing on the merits.

26. Washington Mutual represents to this Honorable Court that if they had known about this issue they would have appeared and defended just as they have many times before. Washington Mutual represents that in no form or manner did it mean any disrespect for the process of this Honorable Court and most certainly would have never ever "ignored" such a serious matter.

DOCSBHM\1455098\1\ DRAFT 12/21/06  3:44 PM

27.    Counsel for Washington Mutual represents to this Honorable Court that had Counsel known about this action it would have been communicated to Washington Mutual, however the reasons set out above, Counsel had absolutely no knowledge of this Motion prior to the hearing.

**WHEREFORE, ABOVE PREMISES CONSIDERED,** the Creditor herein prays that this Honorable Court will reconsider the Debtor's Motion for Contempt and set aside the Order Imposing Sanctions and the Memorandum Decision entered on December 14, 2006.

Respectfully submitted,

*Sl Walker*

Susannah R. Walker
Attorney for Creditor

OF COUNSEL:
SIROTE & PERMUTT, P.C.
P. O. Box 55887
Birmingham, Alabama 35255-5887
205-930-5424/fax 205-930-5101
swalker@sirote.com

## CERTIFICATE OF SERVICE

I hereby certify in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004 that a copy of the above and foregoing Motion was mailed, first class postage prepaid or served via electronic case management to:

| F. Patrick Loftin | James D. Hildreth | Curtis C. Reding |
|---|---|---|
| P O Box 2566 | Eldora B. Hildreth | P.O. Box 173 |
| Phenix City, AL 36868-2566 | 9 Redfield Drive | Montgomery, AL 36101 |
| | Phenix City, AL 36869 | |

On this the _21_ day of _Dec_, 2006.

*Sl Walker*

OF COUNSEL

**Walker, Susannah**

| | |
|---|---|
| **From:** | Walker, Susannah |
| **Sent:** | Tuesday, February 21, 2006 10:42 AM |
| **To:** | 'F. Patrick Loftin' |
| **Subject:** | JAMES & ELDORA HILDRETH 05-80117-WRS-13 |

**Attachments:** th45011.DOC

Hi Pat,

Please see the attached revised order to add in the 2/06 payment and to reflect current status of account.  A payment was received last week and applied to the 10/05 post payment.  Please note that the payments went up as of the 2/06 post payment.  Please review and let me know if there are any problems with the order by 2/27/06. After that time, we'll send to the court for approval.  Thanks!



th45011.DOC (51
KB)

*Susannah R. Walker*
*Attorney at Law*
*Sirote & Permutt, P.C.*
*2311 Highland Ave South*
*Suite 500*
*Birmingham, AL 35205*
*Phone: 205.930.5424*
*Fax:    205.930.5101*
*NOTICE: This communication is not encrypted and may contain privileged or other confidential information.  If you are not the intended recipient or believe that you may have received this communication in error, please reply to the sender indicating that fact and delete the copy you received. In addition, you should not print, copy, retransmit, disseminate, or otherwise use the information.  THANK*

1

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re

JAMES D. HILDRETH
ELDORA B. HILDRETH,

     Debtors

Case No. 05-80117-WRS
Chapter 13

*3:07CV 209 - wha*

**ORDER SETTING EVIDENTIARY HEARING**

An evidentiary hearing on the motion to reconsider filed by Washington

Mutual Bank FA (Doc. 35) will be held at the United States Bankruptcy Court,

United States Courthouse, Opelika, Alabama, on **Wednesday, January 10, 2007,**

**at 11:30 a.m.**

Done this 4th day of January, 2007.


          /s/ William R. Sawyer
          United States Bankruptcy Judge


c: Debtors
   F. Patrick Loftin, Attorney for Debtors
   Susannah Walker, Attorney for Washington Mutual
   Curtis C. Reding, Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| IN RE: | } |
| HILDRETH, JAMES D., | } CASE NO:    05-80117-WRS-13 |
| SSN xxx-xx-2111, | } |
| HILDRETH, ELDORA | } |
| SSN xxx-xx-2558, | } |
| Debtor. | } |

*3:07 CV 209 - wha*

## MEMORANDUM BRIEF IN SUPPORT OF MOTION TO RECONSIDER

At the hearing on Motion to Reconsider and/or Set Aside, this Honorable Court provided the opportunity for parties to file any supplemental information. COMES NOW, WASHINGTON MUTUAL BANK by and through its undersigned counsel of Sirote & Permutt, PC, and states the following:

### FACTS

1.      On April 28, 2005, Creditor, through its attorney Miller & Clark, filed a Notice of Appearance pursuant to Rule 2002. The Notice of Appearance states that the "proper and exclusive address" for all "notices, pleadings, and copies of Orders" to be mailed to Washington Mutual Bank, FA, 7800 N. 113th Street, Milwaukee, WI 53224.

2.      The Notice of Appearance contemplates that all notices and pleadings for Creditor be served to 7800 N. 113th Street, Milwaukee, WI 53224. Although the Notice of Appearance was filed by an attorney on behalf of the Creditor, the notice itself states that the attorney is active for limited purpose on the Creditor's behalf.

3.      The Notice of Appearance clearly shows the Creditor's intent that notices and pleadings be sent directly to the Creditor instead of to the attorney who filed the notice of appearance.

4.    Sirote and Permutt was retained by Washington Mutual Bank to file a Motion for Relief from Stay, which was filed on November 23, 2005. Subsequent to the filing of that Motion for Relief this Court entered an order dated March 7, 2006 which resolved all of the issues relating to the Motion for Relief. Once the order was entered, Sirote and Permutt closed their file and were not retained to perform any other legal action or duties on behalf of Washington Mutual Bank.

5.    On November 3, 2006, eight months after Washington Mutual Bank had last been before the Court, the Debtors filed a Motion for Contempt against an entity designated as "Washington Mutual." At no time has an appearance been entered on behalf of "Washington Mutual" nor has an entity by the name of "Washington Mutual" filed any pleading through counsel or otherwise in this case.

6.    The Motion for Contempt was sent via electronic notice email to Sirote & Permutt, the attorneys that filed the above mentioned Motion for Relief in this case. A copy of the email that Sirote and Permutt received is attached hereto and designated as Exhibit A. At no time was the motion sent to 7800 N. 113th Street, Milwaukee, WI 53224 as set out in the notice of appearance. At no time has service been made to an officer of the institution by certified mail. At no time did Sirote & Permutt or the Creditor file a notice of appearance asking that a different address be used to serve the Creditor.

7.    There was no notice of appearance filed by Sirote & Permutt at any point in the case other than the brief appearance for the sole purpose of resolving the Motion for Relief. Further, **no** attorney entered any appearance on behalf of "Washington Mutual" in the contested matter styled "Motion for Contempt" which

precipitated in the Court's order from which Washington Mutual Bank now seeks reconsideration.

8.    The e-mail containing the Motion for Contempt did not reference Washington Mutual Bank or the previously entered Order on Motion for Relief.

9.    A copy of Debtors' Motion for Contempt was not received by Sirote and Permutt via first class mail.

10.    It is alleged by counsel for the Debtors that he contacted "Washington Mutual" directly at dates and times after the entry of the order on the Motion for Relief from Stay. Debtors' counsel did not call or contact Sirote and Permutt to seek permission to contact "Washington Mutual" directly.

## LAW

11.    Rule 7004(h) provides that "Service on an insured depository institution (as defined in section 3 of the Federal Deposit Insurance Act) in a contested matter or adversary proceeding shall be made by certified mail addressed to an officer of the institution, unless (1) the institution has appeared by its attorney, in which case the attorney **shall** be served by first class mail."

12. In adopting Rule 7004(h) Congress clearly intended to fashion more rigorous service of process requirements for Adversary Proceedings and contested matters initiated against insured depository institutions. In fact, the requirements of Rule 7004(h) are more rigorous than is required under Rule 7004(b)(3). See Hamlett v. AmSouth Bank, 322 F.3rd 342, (USCA 4th Circuit)

## ARGUMENT

13. The movant improperly brought the matter before the Court in violation of Local Rule 9020-1 which requires parties bringing issues regarding violations of section 362 to do so in the form of a Motion or Adversary Proceeding. Since the motion was improperly before the Court in violation of this Court's own local rules, the Court should grant Washington Mutual Bank's Motion for Reconsideration so that the matter can be brought properly before the Court in compliance with the local rules.

14. The "Motion for Contempt" was not properly served on **any** party. "Washington Mutual" was listed on the motion as being served at P.O. 3139, Milwaukee, WI 53201-3139. No officer of the institution was served by certified mail as required by Rule 7004(h). No attorney who had entered an appearance in the contested matter, which is the subject of the Motion for Reconsideration was served by first class or electronic mail because no attorney had entered an appearance in the contested matter. The only attorneys that had appeared before the Court on behalf of Washington Mutual Bank had done so for limited purposes. After those purposes were fulfilled, they had no further interest in the case.

15. If the Court were to hold that anytime an attorney has filed a Proof of Claim, a Motion or any other limited one time matter that routinely comes before the Court that the attorney has entered a permanent appearance, the Court would create an impossible burden for the attorney. This would require the attorney to monitor every piece of paper and every notice of each and every kind, regardless of whether or not it has any bearing on the issues with which the attorney may have been involved. In addition,

the attorney would be obligated to monitor cases in which he is no longer retained and authorized to represent a client.

16.    If the Court finds that Sirote and Permutt by virtue of filing a Motion for Relief for Washington Mutual Bank over a year prior to the contested matter of the Debtors' Motion for Contempt, and finds that the electronic notice to Sirote and Permutt complied with rule 7004(h)(1), the Court would be imputing an appearance that simply did not occur. The ruling would not be in line with the spirit and the law of due process and service of process. Service of process should be calculated to serve a party. In this matter, no party was properly served. If the Court finds that Sirote & Permutt was actively representing Washington Mutual Bank, the rules require an attorney to be served by first class mail, which did not occur in this case. Despite the fact that the Federal Bankruptcy Rules that govern this matter were clearly written with full knowledge of electronic filing, Congress still requires service by first class mail.

17.    As shown in Exhibit "A", the e-mail fails to contain any parties, description, or explanation, except the heading "Motion for Contempt." The document does not contain the words "Washington Mutual" or Washington Mutual Bank. How could anyone know that this matter was related to a client, especially when Sirote and Permutt and numerous other firms receive literally tens of thousands of electronic notice e-mails?

18. Since no attorney entered an appearance in the contested matter, the only avenue left under Rule 7004(h) was for the Debtors' attorney to serve an officer of the institution by certified mail, which was not done.

19. The Debtors' Motion for Contempt did not name the real party in interest and therefore the Court should reconsider its order and allow the real party in interest to be named and participate. The Debtors named "Washington Mutual" although the real party in interest is Washington Mutual Bank. The Court also made the distinction between the treatment of an entity such as "Washington Mutual" versus Washington Mutual Bank for the purposes of determining the proper method of service.

20. If Sirote and Permutt, were the attorney for the "Washington Mutual" that is referred to in the Motion for Contempt and if Sirote and Permutt is deemed to have entered an appearance in the contested matter styled "Motion for Contempt" by virtue of their actions in the case eight months prior to the Motion for Contempt, then clearly the Debtors' attorney has brazenly violated numerous sections of the Alabama Code of Professional Responsibility by contacting a represented client of another attorney without permission. The Debtors' counsel cannot take the position that "Washington Mutual" was not represented so his contact with them was appropriate and then take the position that Sirote and Permutt had entered an appearance in the contested matter by virtue of its actions eight months before the Motion for Contempt. By taking such contradictory positions in order for the Debtors to benefit from the provisions of Rule 7004(h)(1), the Debtors are trying to "have it both ways."

21. In this Court, fees awarded for handling of a Motion for Relief are frequently reduced. The fees awarded by the Court are awarded based on the legal work performed at the time of the Motion and the order on Motion for Relief. There has never been any indication from this Court or any parties involved that once an attorney files a Motion for Relief that attorney has committed to represent the Creditor for the remaining

time of the case. Debtor attorneys are compensated based on an anticipated five year period of representation of the Debtor in a Chapter 13. However, a Motion for Relief is considered concluded once the Order is entered.

21. Washington Mutual Bank is simply asking for its day in Court. There is clearly enough evidence showing improper service among other errors that were made in this case. It has long been held that Courts abhor defaults. In this case there is no prejudice to any party to allow Washington Mutual Bank to defend itself in this Honorable Court. In fact the order may not have been entered against the proper party, which is an issue for the Court to decide. If Washington Mutual Bank is allowed to defend itself and be properly named and brought before the Court in a proper manner, then should the Court rule in favor of the movant, the enforceability of said order would be more secure.

Wherefore, premises considered, Washington Mutual Bank prays that this Honorable Court reconsider its order on the Motion for Contempt, set aside said order and allow both parties to present their cases so that justice may be served.

Respectfully submitted,

_Susannah R. Walker_

Susannah R. Walker (WAL158)
Attorney for Creditor
2311 Highland Avenue South, Suite 500
Birmingham, AL 35205
205/930-5424

## CERTIFICATE OF SERVICE

I hereby certify in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004 that a copy of the above and foregoing was mailed, first class postage prepaid or served via electronic case management to:

F. Patrick Loftin
P O Box 2566
Phenix City, AL 36868-2566

James D. Hildreth
Eldora B. Hildreth
9 Redfield Drive
Phenix City, AL 36869

Curtis C. Reding
P.O. Box 173
Montgomery, AL 36101

On this the _15_ day of _Mar_____, 2007.

_____
OF COUNSEL

**Walker, Susannah**

| | |
|---|---|
| **From:** | almbecflive@almb.uscourts.gov |
| **Sent:** | Friday, November 03, 2006 9:19 AM |
| **To:** | ECFb@almb.uscourts.gov |
| **Subject:** | 05-80117 Motion for Contempt |

*3:07CV209-wha*

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. Bankruptcy Court

### Middle District of Alabama

Notice of Electronic Filing

The following transaction was received from Loftin, F. Patrick entered on 11/3/2006 at 9:18 AM CST and filed on 11/3/2006
**Case Name:** James D. Hildreth and Eldora B. Hildreth
**Case Number:** 05-80117
**Document Number:** 28

**Docket Text:**
Motion For Contempt Filed by F. Patrick Loftin on behalf of Eldora B. Hildreth, James D. Hildreth. (Attachments: # (1) Exhibit Exhibti A# (2) Exhibit Exhibit B# (3) Exhibit Exhibit C) (Loftin, F.)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** C:\Documents and Settings\Lori L. Davis\My Documents\Pat\bankruptcy\Hildreth, James and Eldora\Microsoft Word - Motion for COntemopt.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=996783231 [Date=11/3/2006] [FileNumber=3297210-0]
[18261d7191f63be425dd177f68e3bec3f85314769e4a69a2548a77aded88047d9c5d
b00b018e4f8e5b34137e37dcd496028d6ed3323d9dfb277b38181bb1027e]]
**Document description:** Exhibit Exhibti A
**Original filename:** C:\Documents and Settings\Lori L. Davis\Desktop\Exhibit A
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=996783231 [Date=11/3/2006] [FileNumber=3297210-1]
[46cc29ad75d53483984b9474c86ba9335c2f1c014942d9d82eecf91ae7fa0725d9c3
1cb1adeebf0934e03356c0fb34c9254f47e664df72569e753223c4e57f7a]]
**Document description:** Exhibit Exhibit B
**Original filename:** C:\Documents and Settings\Lori L. Davis\Desktop\Exhibit B
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=996783231 [Date=11/3/2006] [FileNumber=3297210-2]
[00692a6f00176560b05a43e5734c3d89126dc4b7a1d5bbd361d62ec6158d41d05897
6c47d42db96ac3bee53913c4a1a8e65937ac0b9c085be35b555e5b2a00ff]]
**Document description:** Exhibit Exhibit C
**Original filename:** C:\Documents and Settings\Lori L. Davis\Desktop\Exhibit C

1/12/2007

**Electronic document Stamp:**
[STAMP bkecfStamp_ID=996783231 [Date=11/3/2006] [FileNumber=3297210-3]
[086a40bc632eb935f0a68766970d40f5bcf5d24dbaee57baf7e4d8e100e26fd25c18
df0763c58a2478b9638f2ced036186b5dc3f2d0300ff096b302d5c82d0bc]]

**05-80117 Notice will be electronically mailed to:**

Bankruptcy Administrator      ba@almb.uscourts.gov

F. Patrick Loftin      FPLoftin@BellSouth.net, lynnree11@yahoo.com

Diane C. Murray      bankruptcy@sirote.com

Curtis C. Reding      trustees_office@ch13mdal.com

Susannah R. Walker      bankruptcy@sirote.com

**05-80117 Notice will not be electronically mailed to:**

1/12/2007

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                      Case No. 05-80117-WRS
                                                           Chapter 13
JAMES D. HILDRETH and
ELDORA B. HILDRETH,                        3:07CV 209- wha

        Debtors.

**ORDER**

Pursuant to this Court's Memorandum Decision of this date, the Motion to

Reconsider filed by Washington Mutual Bank (Doc. 35) is DENIED.


Done this the 9th day of February, 2007.


                                        /s/ William R. Sawyer
                                        United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re

JAMES D. HILDRETH and
ELDORA B. HILDRETH,

        Debtors.

Case No. 05-80117-WRS
Chapter 13

*3:07CV 309-Wha*

## MEMORANDUM DECISION

    This Chapter 13 case is before the Court upon Washington Mutual Bank's Motion

to Reconsider (Doc. 35) this Court's Order and Memorandum Decision imposing

sanctions against Washington for violations of the automatic stay. (Docs. 31, 32). For

the reasons set forth below, the Court's December 14, 2006 Order is affirmed, and the

Motion to Reconsider is DENIED.

## I. BACKGROUND

    On November 3, 2006, the Debtors James and Eldora Hildreth filed a motion

seeking sanctions against Washington Mutual Bank ("Washington"). (Doc. 28). The

motion came for hearing on December 6, 2006. The Debtors were present at the hearing

in person and by counsel F. Patrick Loftin, but Washington did not appear. At the

hearing, the Debtors testified that they had received approximately sixty telephone calls

and three letters from Washington threatening foreclosure of the Debtors' home. The

Debtors proffered the letters into evidence. On December 14, 2006, the Court issued an

Order and Memorandum Decision awarding damages against Washington in the amount

of $28,900.00. (Docs. 31, 32). Furthermore, the Court required Washington to repay

$2,944.77 to the Chapter 13 Trustee. (Id.).

On December 21, 2006, Washington filed this Motion to Reconsider. (Doc. 35). On January 10, 2007, this Court held an evidentiary hearing on Washington's motion. The Debtors were present in court in person and by counsel F. Patrick Loftin, and Washington was present by counsel Susannah Walker.

## II. CONCLUSIONS OF LAW

Washington alleges two grounds for reconsideration. First, it argues that service on it was improper under Rule 7004, FED. R. BANKR. P. Washington asserts that since service was ineffective, it was denied notice of the motion and was not afforded an opportunity to dispute the Debtors' factual allegations. Second, it argues that the Debtors' motion for contempt was improperly brought as a motion. Washington asserts that a proceeding to recover damages must be brought as an adversary proceeding. The Court will discuss each argument in turn.

Washington first argues that the motion was improperly served on its attorney Susannah Walker. Rule 7004(h) provides, in relevant part, as follows:

> Service on an insured depository institution (as defined in section 3 of the Federal Deposit Insurance Act) in a contested matter or adversary proceeding shall be made by certified mail addressed to an officer of the institution unless--
>
> (1) the institution has appeared by its attorney, in which case the attorney shall be served by first class mail.

FED. R. BANKR. P. 7004(h). Section 3 of the Federal Deposit Insurance Act defines an "insured depository institution" as "any bank or savings association the deposits of which are insured by the Corporation . . ." 12 U.S.C. § 1813(c)(2). This Court finds that Washington is an "insured depository institution" within the meaning of Rule 7004(h), and Washington has not disputed that conclusion. It is also undisputed that Susannah

2

Walker, as attorney for Washington, was served through electronic means.  Furthermore, the Debtors' attorney has certified that he served Susannah Walker at her law firm's post office box by first class mail.  (Doc. 28, p. 3).

Washington's quarrel is that Susannah Walker was not its attorney of record in this bankruptcy proceeding, but that she was merely retained to file a motion on behalf of Washington.  Washington argues that since Susannah Walker was only retained for a limited purpose, service on her was not proper.

This Court does not agree with Washington's assertions.  An attorney does not have to enter a formal appearance in a case in order to be the party's attorney for purposes of service of process.  See, e.g., Rubin v. Pringle (In re Focus Media, Inc.), 387 F.3d 1077, 1084 (9th Cir. 2004) (finding that service was properly made on the party's attorney, because although the attorney had not entered a formal appearance, he had participated in the case on the party's behalf); Ms. Interpret v. Rawe (In re Ms. Interpret), 222 B.R. 409, 416 (Bankr. S.D.N.Y. 1998) (finding that although the attorney had not entered an appearance in the case, she had been "active" in the proceedings, even attending a creditor's meeting on behalf of the party).  Susannah Walker appeared numerous times in this bankruptcy case, filing a motion and submitting a proposed order on behalf of Washington: On January 26, 2006, she filed a motion to set aside order denying relief (Doc. 23); and on March 7, 2006, she submitted a proposed order on relief from the stay (Doc. 26).

Susannah Walker asserts that she receives thousands of emails and that she cannot possibly "monitor each pleading filed in each and every case in which [she] has filed a motion for a creditor." (Doc. 35, ¶ 6).  This Court has determined that she files motions

3

on behalf of various creditors approximately ten to twelve times each month. If not for her numerous filings, she would not receive the "thousands of emails." Furthermore, not only was she served with notice of the contempt motion, she was also served by this Court with a notice of the hearing. "The parties to a case bear the responsibility of monitoring the court's docket." McMillian v. District of Columbia, 233 F.R.D. 179, 181 (D.D.C. 2005); see also, In re Mayhew, 223 B.R. 849, 856 (D.R.I. 1998) (stating that it was the duty of the creditor's attorney to monitor the court's docket to keep himself apprised of the developments in the case).

Washington asserts that the "motion for contempt did not name the real party in interest and therefore the Court should reconsider its order and allow the real party in interest to be named and participate." (Doc. 38, ¶ 19). Washington squabbles that the Debtors named "Washington Mutual" in their motion when the real party in interest was "Washington Mutual Bank." The Court finds this argument wholly without merit. The real party in interest was the same party that filed the motions for relief from the stay (Docs. 13, 23) and contacted the Debtors through phone calls and letters. That party is the same party that the Debtors served with the motion for contempt. This Court finds that the distinction between naming "Washington Mutual" or "Washington Mutual Bank" in the motion is inconsequential.

Washington's second argument is that the Debtors' Motion for Contempt for violation of the automatic stay should have been brought as an adversary proceeding and that the proceeding was improperly brought as a motion. Washington cites Rule 7001, FED. R. BANKR. P., arguing that "Rule 7001 provides that a 'proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the

4

trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002,' <u>shall</u> be brought by adversary proceeding." (Doc. 35, ¶ 10) (emphasis in original). Rule 7001 recites types of adversary proceedings, but does not dictate which proceedings must be brought as adversary proceedings.

In this Court's December 14, 2006 Memorandum Decision, the Court pointed out that

> The Debtors are properly proceeding by way of a motion and need not have filed an Adversary Proceeding. <u>See</u> <u>In re LTV Steel Co., Inc.</u>, 264 B.R. 455, 462-63 (Bankr. N.D. Ohio 2001) (holding that the stay violation was properly before the court on motion rather than adversary proceeding); <u>see also</u>, <u>In re Timbs</u>, 178 B.R. 989, 994 (Bankr. E.D. Tenn. 1994) (holding that sanctions may be imposed pursuant to § 362(h) by way of motion rather than complaint).

(Doc. 32, p. 4).

<u>In re Timbs</u> involved a motion filed a debtor for violation of the automatic stay. The defendant argued, *inter alia*, that the proceeding was improperly brought, because it was a proceeding to recover money or property and that Rule 7001 required that it be brought as an adversary proceeding. 178 B.R. at 993. The bankruptcy court first noted that numerous other courts have determined that sanctions under § 362(h) [or (k)] may be brought by motion rather than adversary proceeding. <u>Id.</u> at 994 (citing <u>Budget Serv. Co. v. Better Homes of Va., Inc.</u>, 804 F.2d 289 (4th Cir.1986); <u>In re Dencklau</u>, 158 B.R. 796 (Bankr. N.D. Iowa 1993); <u>In re McGinty</u>, 119 B.R. 290 (Bankr. M.D. Fla. 1990); <u>Matter of Mullarkey</u>, 81 B.R. 280 (Bankr. D.N.J. 1987)). The court stated that

> [A]ll actions to recover damages for willful violations of the automatic stay could technically be construed as 'proceedings to recover money or property" and thus, under FED. R. BANKR. P. 7001(1), would be required to be brought as an adversary proceeding. However, this court is unpersuaded that FED. R.

5

BANKR. P. 7001(1) should be read so broadly and is not convinced
that the numerous courts which have ruled that such matters may
be brought by motion are incorrect.

Id. at 994.  This Court agrees with the holding in Timbs and upholds its conclusion that a

motion for damages for violation of the automatic stay may be properly brought be

motion.

### III. CONCLUSION

As this Court has found no ground upon which to justify reconsideration, the

motion is DENIED.  The Court will enter an order on a separate document in accordance

with Rule 9021, FED. R. BANKR. P.


Done this the 9th day of February, 2007.


/s/ William R. Sawyer
United States Bankruptcy Judge

6

# United States Bankruptcy Court
## Middle District of Alabama

In re:                                              Case No.  05-80117-WRS

James D. Hildreth and                               Chapter 13

Eldora B. Hildreth,

_3:07CV 209- wha_

Debtors

### NOTICE OF APPEAL

Washington Mutual Bank, a creditor appeals under 28 U.S.C. § 158(a) from the
following Orders entered by the Honorable William R. Sawyer, United States Bankruptcy
Judge. The Order imposing sanctions against Washington Mutual for violation of the
automatic stay entered on December 14, 2006 and the Order denying Washington Mutual
Bank's Motion to Reconsider/Set Aside entered on  February 9, 2007.

   The names of all parties to the Order appealed from and the name, addresses, and
telephone numbers of their respective attorneys are as follows:

1.  F. Patrick Loftin, P.O. Box 2566, Phenix City, AL 36868-2566.  334-297-1870.
Attorney for Debtor

2.  James D. and Eldora B. Hildreth, 9 Redfield Drive, Phenix City, AL 36869.  Debtors

3.  Curtis C. Reding, P.O. Box 173, Montgomery, AL 36101.  Trustee

Dated February 16, 2007.

Signed:  _SRWalker_

Susannah R. Walker (WAL158)

Attorney for Appellant
Susannah Walker
Sirote and Permutt, P.C.
P.O. Box 55727, Birmingham, Al 35255-5727
205-930-5424

SCANNED

03/03/2007  03:12     9013723731          TRICIA BASHAM                    PAGE  02

3:07CV209 wha

## United States Bankruptcy Court
## Middle District of Alabama

**In Re:**

James & Eldora Hildreth,

          **Debtor.**

**Case Number:**

05-80117

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### TRANSCRIPTIONIST'S ACKNOWLEDGMENT

1.   The foregoing transcript order received on:  2/27/07

2.   Satisfactory arrangements ( ) have (X) have not been made for payment of the transcript cost.

3.   Number of trial or hearing days:  1

4.   Estimated Number of Transcript Pages:  25

5.   Estimated completion date:  3/25/07

6.   If enlargement of time for filing is requested and transcript cannot be completed within 30 days from a receipt of transcript order, state amount of work accomplished on the transcripts, etc.

_____3/8/07_____                     Patricia Basham
(Date)                            Signature - Certified Transcriptionist